IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAMON WRIGHT,

        Petitioner,

vs.                                         No. CIV 99-304 JP/LFG

TIM LeMASTER et al.,

        Respondents.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1. This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed March 19, 1999. Respondent filed his answer [Doc. 11] on May 19, 1999 and a Motion to Dismiss [Doc. 12] on May 25, 1999. Petitioner Ramon Wright ("Wright") is currently confined in the New Mexico State Penitentiary in Santa Fe, New Mexico. He pled guilty to trafficking cocaine and was convicted on May 7, 1997. Under the Judgment and Sentence entered September 14, 1997 by the Fifth Judicial District Court in State v. Ramon Wright, No. Cr. 96-59 (County of Lea, New Mexico), Wright was sentenced to nine years with an additional one year enhancement for habitual offender status.

2. As grounds for federal habeas review, Wright contends: (1) his guilty plea was involuntary in that he did not understand at the time he entered the plea that the State would recommend, rather than guarantee, a five-year sentence; and (2) he was denied effective assistance of counsel.

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

3. Respondent filed a motion to dismiss [Doc. 12], contending that the record demonstrates, and the state courts found, that Wright was fully informed of the possible consequences of his plea, and that this finding is entitled to deference by a federal habeas court. Respondent also argues that Wright's ineffective assistance claim, albeit unexhausted, is subject to summary dismissal.

## Procedural History

4. Wright did not appeal his conviction. However, shortly after Judgment and Sentence, his trial counsel filed on his behalf motions to withdraw the guilty plea and for reconsideration of the Judgment and Sentence, on grounds that Wright did not understand that the sentence for which he had bargained was merely a recommendation, and the judge could sentence him to a longer term than that recommended by the State. (Answer Exs. D, E). The judge held an evidentiary hearing, at which Wright testified, and also listened to the official tape recording of the plea hearing. He ultimately denied the motion, finding that the plea was knowingly entered. (Answer, Exs. F, N).

5. Wright did not appeal this ruling but thereafter filed *pro se* a motion to correct his sentence. The state district court treated this motion as a habeas corpus proceeding, ordering the State to file a response. (Answer, Ex. H). After considering Wright's motion and the State's response, the court denied this motion, too, noting that the earlier motion to withdraw the plea had been denied, and Wright had not alleged any additional grounds to justify changing that order. (Answer, Ex. J).

6. Wright then petitioned for a writ of certiorari to the New Mexico Supreme Court. That court treated the matter as a habeas corpus petition and granted cert. (Answer, Ex. L). The state appellate defender was appointed to represent Wright, and briefs were filed. (Answer, Exs. M-O). The state supreme court thereafter quashed the writ. (Answer, Ex. P).

## Voluntariness of Plea

7. Wright claims that he was misinformed, or that he misunderstood, the full consequences of his guilty plea. This claim was considered and rejected by the state court in postconviction proceedings. Although he did not file an appeal of his conviction, Wright did file motions to withdraw his plea and for reconsideration of his sentence shortly after the conviction. In addition, several months later he filed a motion to correct sentence, which as noted above was treated by the state courts as a habeas petition. Before ruling on the first two motions, the district court held an evidentiary hearing and listened to tapes of the plea proceedings. In denying the later motion to correct, the court noted that Wright had failed to raise any new evidence to justify relief.

8. Since the advent of the Antiterrorism and Effective Death Penalty Act, "a federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state court," unless the state proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999); 28 U.S.C. §2254(d). This Court cannot say that the state court's rulings were contrary to established federal law or constituted an unreasonable determination of the facts in light of the evidence.

9. On review, a federal court may set aside a state guilty plea only for failure to satisfy due process. Miles v. Dorsey, 61 F.3d 1459, 1465 (10th Cir. 1995). A defendant has not been given due process unless his guilty plea was voluntarily and intelligently made. Id., *citing* Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711-12 (1969). "To the extent that the question of whether the defendant knowingly and voluntarily made the plea depends on findings of fact made by the state

court on habeas review, these findings, with specified exceptions, carry a presumption of correctness." Cunningham v. Diesslin, 92 F.3d 1054, 1060 (10th Cir. 1996). Petitioner must present clear and convincing evidence to rebut this presumption. Smallwood, at 1265.

10. The pertinent portions of the plea hearing and sentencing hearing were quoted in the parties' briefs on Wright's application for certiorari to the New Mexico Supreme Court, following denial of his motion to correct sentence. Neither party disputed the accuracy of these quotations in the state courts, nor in this habeas proceeding, and the Court will accept them as accurate.

11. At the plea hearing on May 7, 1997, the judge asked Wright if he understood that "you don't have to enter a plea of guilty, nor do you have to enter an admission to the supplemental criminal information, that you do have the right, if you choose, to put the state to its burden of proof . . .." Wright stated that he understood. (Answer, Ex. N, at 2).

12. The judge explained to Wright that he could be sentenced to a maximum term of nine years and a fine of ten thousand dollars. Wright said that he understood, adding "he's told me," presumably referring to his attorney. (Answer, Ex. N, at 2). The judge also informed Wright of the constitutional rights that he would be giving up by pleading guilty, and Wright indicated that he understood. (Answer, Ex. N, at 2-3).

13. The judge also asked Wright if he understood and consented to the terms of the plea agreement; Wright acknowledged that he did. The judge went on to ask Wright, "But you understand that the state is going to recommend that you only serve five years, Mr. Wright, but that that is up to the court, the sentence that's imposed, there's no guarantee that I'll do that. Do you understand that?" Wright answered, "Right. Yeah, I understand that." (Answer, Ex. M, at 1; Ex. N, at 3).

4

14. In addition, the judge asked Wright, "Do you understand that if I decide to impose the entire sentence in this matter, that you can't withdraw your guilty plea. Do you understand that?" Wright responded, "Yes." The judge also asked Wright to confirm that his plea was voluntary and not the result of force, threats, or promises other than the plea agreement. Wright did so. (Answer, Ex. M, at 1; Ex. N, at 4).

15. The tape of the plea hearing also contains an exchange between Wright and his trial counsel, Perry Abernethy, in which Wright acknowledges that Abernethy explained the plea agreement to him, and explained a certificate in which Wright acknowledged that the judge informed him of the constitutional rights he was giving up by pleading guilty. (Answer, Ex. N, at 4-5). Copies of both the plea agreement and the "Guilty Plea Proceeding" with certificate are part of the record herein, and both contain Wright's signature. (Answer, Exs. B, C). In addition, the Guilty Plea Proceeding document states clearly that Wright's sentence could range up to a maximum of nine years and $10,000, with enhancement for habitual offender status, followed by two years parole. (Answer, Ex. C).

16. Finally, the judge stated that he would ask for a presentence report and would release Wright pending sentencing, telling him also that he would take into account any failure to appear and any additional habitual offender charges filed against Wright in the interim. Wright indicated that he understood. (Answer, Ex. N, at 5-6). Wright later failed to appear at a sentencing hearing, and his attorney explained that he was in Hobbs city jail at the time. (Answer, Ex. N, at 6-7).

17. The sentencing hearing was held at a later date. At this hearing, the judge reminded Wright and his attorney that he had ordered a presentence report, "since the agreement was just a recommendation, it was not a binding sentence agreement." (Answer, Ex. N, at 6). The judge gave

Wright an opportunity to address the court, which he declined. He then went to state that he had reviewed the "rather lengthy" presentence report and had decided that he would reject the State's recommendation for a five year sentence and instead sentence Wright to nine years, plus a one-year enhancement for habitual offender status. (Answer, Ex. N, at 7).

18. Wright spoke up in court immediately, expressing surprise at the ten-year sentence. He asked whether he could appeal the sentence, and the judge told him to talk to his attorney about that. (Answer, Ex. M, at 1-2; Ex. N, at 7-8). Shortly after the sentencing hearing, Abernethy filed on Wright's behalf a written motion to withdraw the guilty plea, asserting that the plea "may have been entered when the defendant did not understand that the sentence was a recommendation and not a guarantee and that the judge could reject the recommendation and proceed to sentence defendant to a greater sentence." (Answer, Ex. D).

19. The trial judge held an evidentiary hearing on this motion. Wright testified at the hearing, telling the court he wanted to withdraw his plea, that he did not understand the agreement and believed he could only get five years. He stated that he heard the judge explain that the five years was just a recommendation, but he "didn't understand it like that," that "[t]hey said it was just a formality." (Answer, Ex. M, at 2; Ex. N, at 9-10). In addition to taking evidence at the hearing, the judge listened to tapes of the earlier plea hearing. (Answer, Ex. M, at 2; Ex. N, at 10).

20. The judge denied Wright's motion to withdraw his plea, making written findings that the plea was "knowingly entered by the Defendant Ramon Wright," and that he waived his rights "after having been advised of those Rights and the consequences of his Plea by the Court." (Answer, Ex. F).

21. This Court defers to the finding of the state court that Wright's guilty plea was voluntarily and intelligently made. This decision was not contrary to established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.

22. As noted above, the judge informed Wright that the five-year recommendation was not a guarantee. Wright indicated, both in writing and in open court, that he understood this. "Solemn declarations in open court carry a strong presumption of verity," Cunningham, at 1062. In addition, Wright's trial counsel certified in writing that he had discussed the case with his client in detail, that he had advised him of his constitutional rights and all possible defenses, and that he had conferred with his client and explained to him in detail the contents of the affidavit wherein Wright certified that the judge had advised him of the possibility that he could receive a maximum of ten years' incarceration. (Answer, Exs. B, C).

23. Wright later claimed that he thought it was "just a formality" for the judge to advise him that the five-year figure was not a guarantee, but he does not state why he thought this or what the source of this information was. Although Wright's trial attorney filed a motion to withdraw the plea, asserting that Wright's plea "may have been entered when the defendant did not understand that the sentence was a recommendation and not a guarantee . . .," (Answer, Ex. D), counsel never stated that he misinformed Wright, or that he himself was mistaken as to the binding effect, or lack thereof, of the state's recommendation.

24. Wright has not presented evidence to rebut the presumption that the state court correctly found that his guilty plea was knowingly and voluntarily made. There is nothing to show that his attorney, the prosecutor, or the court, promised Wright or guaranteed that he would receive a five-year sentence. There is nothing to show that the State did not abide by the agreement to recommend

7

five years. "The mere fact that [the defendant] did not receive the . . . sentence that the prosecutor recommended does not convert an otherwise voluntary plea into an involuntary plea." Fisher v. Shillinger, 28 F.3d 112 (Table, text in Westlaw) No. 93-8112, 1994 WL 209870, at *3 (10th Cir. May 26, 1994). *See also*, United States v. Williams, 919 F.2d 1451, 1457 (10th Cir. 1990) ("contrary to Williams' claims, the record shows that Williams' plea was voluntary because it was made with the knowledge that the sentencing recommendation was nonbinding").

25. To the extent Wright argues that the trial court violated his agreement to plead guilty in exchange for a guaranteed sentence of five years, and failed to give him an opportunity to withdraw his guilty plea, those arguments are not supported by the record. As detailed above, the trial court granted Wright an evidentiary hearing on his motion to withdraw his plea, took testimony, and listened to tapes of the plea hearing. The judge decided that the plea was indeed voluntary in that it was made with knowledge of the nonbinding nature of the state's recommendation. Wright has failed to rebut this finding by clear and convincing evidence (or, indeed, by any evidence at all except his own statement that he assumed the judge didn't mean what he said and it was "just a formality"). This showing does not establish a constitutional violation and will not support federal habeas relief.

### Ineffective Assistance of Counsel

26. Wright did not raise his claim of ineffective assistance of counsel in any state proceeding. The claim is therefore unexhausted; however, the Court will exercise its discretion to consider this claim and will deny it on the merits. 28 U.S.C. §2254(b)(2); Granberry v. Greer, 481 U.S. 129, 131-33, 107 S. Ct. 1671, 1673-74 (1987).

27. Wright contends that his trial counsel was ineffective in that the attorney "should have known that the Plea Bargain that Trial Attorney had negotiated for the Petitioner was to be over ruled

8

by the Trial Judge," the attorney failed to exhaust all avenues open to him to ensure that Wright received the sentence within the plea bargain or to get the guilty plea withdrawn so that Wright could proceed to trial, and counsel failed to keep Wright informed of the progress of his case or to inform him of the time limit for bringing his claims to federal court. (Petition, at 10-11).

28. A habeas petitioner alleging ineffective assistance of counsel bears the burden of showing not only that his counsel's performance was constitutionally defective, but also that counsel's errors prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Rogers v. United States, 91 F.3d 1388, 1391 (10th Cir. 1996). The Strickland standards apply to claims of ineffective assistance arising out of the plea process. Raven v. Attorney General, 185 F.3d 875 (Table, text in Westlaw), No. 98-6472, 1999 WL 390967, at *2 (10th Cir. June 15, 1999), *citing* Hill v. Lockhart, 474 U.S. 52, 57-58, 106 S. Ct. 366, 371 (1985). Wright has failed to meet this burden.

29. There is nothing on the record to indicate that trial counsel "should have known" that the trial judge would reject the five-year sentence recommendation. Wright's trial counsel was aware, as was Wright, that the plea bargain might be "overruled by the trial judge" since, as noted above, the judge made clear at the plea hearing that the five-year sentence was merely a recommendation and that the final decision on the matter was exclusively within the province of the judge. The attorney, of course, had no way of knowing that the judge would definitely reject the recommendation. The trial judge stated at the plea hearing that it "certainly . . . would be something that I would take into consideration at sentencing if you don't show up or if you get arrested on any other criminal activity while you're out." (Answer, Ex. N, at 6). Wright's attorney could not predict that Wright would miss the sentencing hearing because he was incarcerated in the Hobbs city jail. His failure to make

9

such a prediction does not constitute ineffective assistance of counsel.

30. Wright places the blame on his attorney for failure to "exhaust all avenues available to him" to ensure that Wright received the sentence "within the plea bargain." This argument assumes that Wright bargained for a specific, guaranteed sentence, when in fact his bargain was that the prosecutor would recommend a five-year sentence. He was fully informed that the five years was not a guarantee, and that both the presentence report, and his own actions, could affect the sentence ultimately rendered by the judge.

31. Wright does not argue, or even allege, that his attorney assured him he would definitely receive a five-year sentence in exchange for his plea. Even if trial counsel had made an "erroneous sentence estimate," that would not render the plea involuntary nor would it constitute ineffective assistance of counsel in the absence of petitioner's reliance on a material misrepresentation by counsel, which in any event was not alleged or proved in this case. Braun v.Ward, 190 F.3d 1181, 1190 (10th Cir. 1999); United States v. Williams, at 1456.

32. In addition, there is nothing on the record to show that trial counsel did not do all he could to get Wright's guilty plea withdrawn. He filed two post-trial motions for withdrawal of the plea and reconsideration of the sentence, he asked for and was granted an evidentiary hearing on these motions, and he continued to represent Wright at the hearing. The fact that he was not successful does not mean he was constitutionally ineffective. Wright points to no specific failing on the part of counsel which prejudiced him in his attempts to withdraw his plea. Abernethy did not appeal denial of the motion, but Wright has not shown that he was prejudiced thereby, as the issue was raised on further postconviction proceedings during which Wright was represented by the appellate defender.

33. Finally, Wright alleges that trial counsel failed to keep him informed of the progress of his case. He does not specify how this alleged failure manifested itself, nor how it may have prejudiced his defense. Generalized allegations of ineffectiveness, without supporting facts, do not justify federal habeas relief. Hatch v. Oklahoma, 58 F.3d 1447, 1469 (10th Cir. 1995); Eskridge v. United States, 443 F.2d 440, 443 (10th Cir. 1971).

34. Wright also contends that his appointed "appellate" counsel was ineffective. The Court assumes that Wright is referring to the state appellate defender, who was appointed to represent Wright in connection with a petition for certiorari following denial of his *pro se* motion to correct sentence. This motion was considered and handled by the New Mexico state courts and the New Mexico Supreme Court as a state habeas petition. The appellate defender was appointed to assist Wright in this postconviction proceeding, which progressed to the point where briefs were filed in the state supreme court, until certiorari was quashed by that court on February 5, 1998. 35. To the extent Wright alleges ineffective assistance of counsel at the postconviction stage, this claim is not cognizable on federal habeas review, as there is no constitutional right to counsel in collateral proceedings. Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993 (1987); Holcomb v. Murphy, 701 F.2d 1307, 1309 (10th Cir. 1983); Ellis v. Martin, No. 98-6450, 1999 WL 1101241 (10th Cir. Dec. 7, 1999).

36. In addition, Wright has not alleged any specific failing on the part of the state appellate defender, aside from the generalized allegation that he "failed to follow all avenues that were available to [him] within the State Court's system and to proper[l]y keep the Petitioner informed as to the progress of his cause . . .." (Petition, at 11). Such generalized allegations do not support a claim for ineffective assistance. Hatch; Eskridge. Wright has not pointed to any facts which would support his

11

allegation that the appellate defender failed to follow any available avenue of relief or failed to keep him informed, nor that the result would have been different if the appellate defender had proceeded in a different manner.

**Recommended Disposition**

That Respondent's Motion to Dismiss [Doc. 12] be granted and the action be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

PETITIONER:
Ramon Wright, pro se

COUNSEL FOR DEFENDANTS:
Joel K. Jacobsen, Esq.